Filed 5/3/23  P. v. Tillman CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

     Plaintiff and Respondent,

v.

ANDREW LEE TILLMAN,

     Defendant and Appellant.

E078605

(Super.Ct.No. RIF72212)

OPINION

APPEAL from the Superior Court of Riverside County.  Sean P. Crandell, Judge. Affirmed.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Anthony DaSilva and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 1996, defendant and appellant Andrew Lee Tillman was the driver of the vehicle in which the front seat passenger, Daniel Marcus Carter (codefendant), used a shotgun to shoot at the victims, killing one. In 1999, a jury convicted defendant of first degree murder (as an aider and abettor) and found that he was a principal armed with a firearm and, as a principal and an aider and abettor, he discharged a firearm from a motor vehicle with the intent to inflict death. (Pen. Code,[1] §§ 187, subd. (a); 12022, subd. (a)(1); 190.2, subd. (a)(21).) He was sentenced to a total indeterminate term of one year in state prison, plus life without the possibility of parole.

On August 17, 2021, defendant filed a petition for resentencing pursuant to section 1172.6 (former § 1170.95).[2] Counsel was appointed, the issue was briefed, and two separate hearings were held. The superior court denied the petition on the grounds it failed to state a prima facie case. The court reasoned that the jury instructions for the special circumstance required the jury to find that defendant had the intent to kill; the jury's verdict found he had the intent to kill; and the jury's finding was upheld on appeal.

Defendant appeals, contending the superior court erroneously denied his petition at the prima facie stage based on the jury's verdicts without determining whether the jury was properly instructed. Because the record of conviction establishes defendant's ineligibility for resentencing relief as a matter of law, we affirm.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Effective June 30, 2022, Assembly Bill No. 200 (2021-2022 Reg. Sess.) amended and renumbered Penal Code section 1170.95 as section 1172.6. (Stats. 2022, ch. 58, § 10.) The current section numbering will be used throughout this opinion.

## I. PROCEDURAL BACKGROUND AND FACTS

### A.     *Defendant's Convictions.*

During late fall of 1996, members of the Elsinore Young Classic (EYC) shot at defendant's home on North Lindsay Street in Lake Elsinore, causing a feud between EYC and defendant (including his friends). In early December, one of defendant's friends brought a "bolt action .30 aught 6 rifle" with a scope to defendant's home for his protection in the event of additional shootings.

On December 12, 1996, defendant hosted a "get together," which began at his house but later moved to his grandfather's house across the street. Many of defendant's friends, including codefendant, attended. One friend brought the rifle. During the party, defendant borrowed his girlfriend's car. He left with codefendant and Rene Canales but returned about five to 10 minutes later. Defendant left again with codefendant, who sat in the front passenger seat, and Canales, Gabriel Adame, and Julius Cheek, who sat in the back. They left to purchase alcohol. Another witness testified that the group left in the car because they had seen some "Latinos." Defendant told his girlfriend that he "wasn't going to do anything stupid."

As they were driving, they saw three people (Frances Rios, Vicky Sanchez,[3] and Alonzo Escobar) at the corner of Main and Summer in Lake Elsinore. At codefendant's request, defendant pulled up to them, and codefendant said, "'You from EYC, homey? You from EYC? What's your name? What's your name?'" One of the females

_____

[3] We note that Ms. Sanchez's first name is spelled differently (Vicky, Vickie, Vicki) throughout the record.

3

responded, "'Just leave us alone. Get away.'" Codefendant said to the guys in the car, "'See that ese. See that ese.'"[4] At codefendant's request, defendant made a turn and pulled up into the parking lot of a closed gas station and stopped the car. Codefendant asked, "'What are you going to do now?'" He then pointed the rifle out the window, shot, and killed Sanchez.[5] He reloaded the rifle and fired a second shot, which grazed Rios's hair. After the second shot, defendant sped off and returned to his grandfather's house. When asked how defendant looked after the shooting, Canales said, "He was just in shock."

Back at defendant's grandfather's house, approximately five to 10 minutes after defendant drove away, his girlfriend and others heard gunshots. When defendant, codefendant, and the three other young men returned to the house, codefendant excitedly bragged about shooting Sanchez: "'I shot somebody.'" "'I got one of them.'" "'Oh, I shot that ese. I shot him. I shot him. Did you see him fall? Did you see him fall? Boy, that's a rush.'"

On May 13, 1999, a jury convicted defendant and codefendant of first degree murder. (§ 187.) Defendant was convicted as an aider and abettor. The jury found true the allegation that he was a principal armed with a firearm, and the special circumstance that, "as a principal, and aider and abettor, intentionally discharged a firearm from a

---

[4] "The EYC gang name is pronounced 'ese,' the Spanish phonetic pronunciation of the letters 'e' and 'c.' An EYC gang member is thus called an 'ese.'"

[5] Defendant was 18 years old at the time of the shooting.

4

motor vehicle with the intent to inflict death." (§§ 12022, subd. (a)(1), 190.2, subd. (a)(21).) The jury also found true the allegation that codefendant personally used a firearm in the commission of the offense, and the special circumstance that the killing was committed intentionally by discharging a firearm from a motor vehicle. (§§ 12022.5, 190.2, subd. (a)(21).) The trial court sentenced defendant to a one-year term in state prison for the personal use of a firearm and a consecutive term of life without the possibility of parole.

On direct appeal, this court affirmed the judgment, concluding, inter alia, that sufficient evidence demonstrated defendant's intent to kill. (See *People v. Carter et al.* (Sept. 8, 2000, E025621) [nonpub. opn.].)

### B. *Defendant's Petition for Habeas Corpus.*[6]

On September 1, 2020, defendant filed a petition for writ of habeas corpus in this court, claiming there was insufficient evidence to support the special circumstance finding because there was a lack of evidence that he was a major participant in the crime and that he acted in reckless disregard for human life. (*In re Tillman*, *supra*, E075619.) This court summarily denied the petition, reasoning that defendant's special circumstances enhancement was based on section 190. 2, subdivision (a)( 21), which requires a finding of intent to kill; thus, the question of whether defendant was a major participant who acted with reckless disregard for human life is irrelevant, and the cases of

---

[6] On July 7, 2022, we granted defendant's unopposed request for judicial notice of his petition for habeas corpus in *In re Tillman* (Sept. 23, 2020, E075619). (Evid. Code, §§ 452, subd. (d), 459.)

*People v. Banks* (2015) 61 Ca1.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 do not apply.

      C.     *Defendant's Petition for Resentencing.*

On September 24, 2021, defendant filed a petition for resentencing under section 1172.6. After appointing counsel, receiving briefing, and holding two separate hearings, the superior court denied the petition on grounds it failed to state a prima facie case. The court reasoned that the jury instructions for the special circumstance required the jury to find that defendant had the intent to kill; the jury's verdict likewise found he had the intent to kill; and this court's decision on direct appeal also found that defendant had the intent to kill.

## II. DISCUSSION

Defendant contends the superior court improperly denied his section 1172.6 petition without conducting an evidentiary hearing. He argues his eligibility for relief based on the jury instructions that allowed the jury to reach its verdict "by finding [he] intended to aid and abet a shooting from a vehicle without a direct intent to kill anyone but with reckless indifference to whether such a shooting was dangerous." He asserts that this is not a valid theory of murder because it does not require malice and it does not require an actus reus of intentionally aiding and abetting a killing. As we explain, we reject his contention.

"A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and

probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced." (§ 1172.6, subd. (a).) The petition must allege the petitioner was (1) charged with one of the enumerated crimes under a theory of felony murder, murder under the natural and probable consequences doctrine, or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; (2) convicted of murder or attempted murder or manslaughter; and (3) the petitioner could not presently be convicted of murder or attempted murder because of changes to sections 188 or 189 (Stats. 2018, ch. 1015, §§ 2, 3) made effective January 1, 2019. (§ 1172.6 subd. (a)(1), (2), (3).)

Where the petition complies with the three requirements, the superior court proceeds to section 1172.6, subdivision (c), to assess whether the petitioner has made "a prima facie showing" for relief. (See *People v. Lewis* (2021) 11 Cal.5th 952, 960.) "[T]he prima facie inquiry . . . is limited. . . . '"[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'" (*Lewis*, at p. 971.) At the prima facie hearing, the court may

consider the record of conviction.[7]  (*Ibid*.)  "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the [superior] court may dismiss the petition."  (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).)

Section 189, as amended, limits liability under a felony-murder theory principally to "actual killer[s]" and those who, "with the intent to kill," aid or abet "the actual killer in the commission of murder in the first degree."  (§ 189, subd. (e)(1), (2).)  "Defendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] Section 190.2'—that is, the statute defining the felony-murder special circumstance."  (*Strong*, *supra*, 13 Cal.5th at p. 708; see § 189, subd. (e)(3).)

The superior court is not required to issue an order to show cause and conduct an evidentiary hearing unless a defendant makes a prima facie showing that he or she could not be convicted of murder after the statutory amendments to sections 188 and 189.  In

---

[7]  However, this does not include our appellate opinion.  "[T]he factual summary in an appellate opinion is not evidence that may be considered at an evidentiary hearing to determine a petitioner's eligibility for resentencing.  [Citation.]  If such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage."  (*People v. Flores* (2022) 76 Cal.App.5th 974, 988; see *People v. Clements* (2022) 75 Cal.App.5th 276, 292 ["[E]ffective January 1, 2022, the Legislature limited use of prior appellate opinions . . . . [T]rial judges should not rely on the factual summaries contained in prior appellate decisions when a section [1172.6] petition reaches the stage of a full-fledged evidentiary hearing."].)

the present case, defendant failed to make such a showing because the record of conviction establishes the jury found that defendant harbored an intent to kill.

The information charged defendant with murder, alleged that his codefendant personally used a firearm and that the intentional killing was perpetrated by means of discharging a firearm from a motor vehicle, within the meaning of section 190.2, subdivision (a)(21). The trial court instructed the jury with CALJIC No. 3.00, which defined principals and aiders and abettors: "Persons who are involved in committing a crime are referred to as principals in that crime. Each principal, regardless of the extent or manner of participation is equally guilty. Principals include: [¶] 1. Those who directly and actively commit the act constituting the crime, or [¶] 2. Those who aid and abet the commission of the crime." The court also instructed the jury on aiding and abetting liability with CALJIC No. 3.01: "A person aids and abets the commission of a crime when he or she, [¶] (1) with knowledge of the unlawful purpose of the perpetrator and [¶] (2) with the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [¶] (3) by act or advice aids, promotes, encourages or instigates the commission of the crime . . . ."

The trial court instructed the jury on the natural and probable consequences doctrine with CALJIC No. 3.02. The court told jurors that, to find defendant guilty of murder, they had to find the crime of murder was committed, defendant aided and abetted the commission of the crime of shooting from a vehicle, and the murder was a natural and

9

probable consequence of the commission of the crime of shooting from a vehicle.[8]  The

court also instructed on the elements of murder (CALJIC No. 8.10), the definition of

malice (CALJIC No. 8.11), the elements of murder perpetrated by means of discharging a

firearm from a motor vehicle with the intent to inflict death (CALJIC No. 8.25.1), and the

requirements for a true finding on the allegation a principal was armed with a firearm

(CALJIC No. 17.15).  And the court gave CALJIC No. 8.80.1, which defined the special

circumstance allegation under section 190.2, subdivision (a)(21):  "If you find a

defendant in this case guilty of murder of the first degree, you must then determine if the

following special circumstance is true or not true:  Intentional discharge of a firearm from

a motor vehicle.  [¶]  The People have the burden of proving the truth of a special

circumstance.  If you have a reasonable doubt as to whether a special circumstance is

true, you must find it to be not true.  [¶]  If you find that a defendant was not the actual

killer of a human being, or if you are unable to decide whether the defendant was the

actual killer or an aider and abettor, you cannot find the special circumstance to be true as

---

[8] "One who aids and abets another in the commission of a crime is not only guilty of that crime, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime originally aided and abetted.

"In order to find the defendant guilty of the crime of murder, as charged in Count I, you must be satisfied beyond a reasonable doubt that:  [¶] 1. The crime of murder was committed; [¶] 2. That the defendant aided and abetted that crime; [¶] 3. That a co-principal in that crime committed the crime of shooting from a vehicle; and [¶] 4. The crime of murder was a natural and probable consequence of the commission of the crime of shooting from a vehicle.

"You are not required to unanimously agree as to which originally contemplated crime the defendant aided and abetted, so long as you are satisfied beyond a reasonable doubt and unanimously agree that the defendant aided and abetted the commission of an identified and defined target crime and that the crime of murder was a natural and probable consequence of the commission of that target crime." (CALJIC No. 3.02.)

10

to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, or assisted any actor in the commission of the murder in the first degree, or with reckless indifference to human life and as a major participant, aided, abetted, or assisted in the commission of the crime of first degree murder which resulted in the death of a human being, namely Vicky Sanchez. [¶] A defendant acts with reckless indifference to human life when that defendant knows or is aware that his acts involve a grave risk of death to an innocent human being. . . .” The court did not instruct on the felony-murder rule.

Consistent with the jury instructions, the trial prosecutor emphasized that the case involved a drive-by shooting. After discussing the elements of murder and the requirements for the jury to find the perpetrators acted with malice, he argued that defendant was liable as a principal who aided and abetted the killing, and because he was necessary as the driver of the car. The prosecutor then stated, “[I]f you do conclude . . . that drive-by murder in the first degree applies, and you all vote guilty that [defendant is] guilty of first-degree murder based upon the drive-by shooting then you go to the special circumstance.” He explained the special circumstance allegation under section 190.2, subdivision (a)(21): “It must be proved that the murder was perpetrated by means of discharging a firearm from a motor vehicle; two, that the perpetrator intentionally discharged the firearm at another person or persons outside the vehicle, and; three, the perpetrator at the time he, in this case, discharged the firearm, intended to inflict death. [¶] . . . [¶] It also applies to [defendant] when you apply the aider and abetter statute. If

11

[defendant] had the same intent as [codefendant], then [defendant] is just as guilty as [codefendant]."

In response, defense counsel argued: "There really is no solid, no concrete, no reliable evidence of proof beyond a reasonable doubt that [defendant] knew that [codefendant] was going to shoot Ms. Sanchez, and that [defendant] knew that [codefendant] was going to kill Ms. Sanchez." Counsel noted that witnesses' descriptions of defendant after the shooting as being "in a state of shock," "sad," "upset," and "not himself," are sufficient to create reasonable doubt. He argued the "essence of the government's case" is that defendant is guilty because he is the driver. Defense counsel added that witness testimony—just before the shooting, defendant was going to leave and continue on with the original plan of going to purchase alcohol—shows that defendant "didn't know that [the shooting] was going to happen."

In rebuttal, the prosecutor argued defendant's actions fail to support an assertion of ignorance. Counsel pointed out that defendant initially left the party to purchase alcohol, but returned shortly thereafter, picked up other friends, drove in a pattern that was not a direct route to a liquor store, pulled into the gas station, and stopped. At the gas station, codefendant pulled out the rifle, fired the first round, then fired a second round, before defendant sped off. The prosecutor argued that under those circumstances, it is reasonable that defendant "knew, and they all knew, that that rifle was in the car. [Codefendant] pulled out the rifle. And between the time that [defendant] saw [codefendant] with the rifle, a few seconds went by. Five seconds; that's a long time under those circumstances. And then the first shot. High-powered 30.06 rifle. Boom.

12

Bolt-action rifle. [¶] The seconds tick away as [defendant] drives away. No. Does he stay right there? Yes, so that [codefendant] can fire another round at the strangers in the street. After the second round was fired, they drive away." In closing, the prosecutor asserted: "[T]he overwhelming amount of evidence shows that [codefendant] was in the passenger seat, that he fired that rifle out the window, that [defendant] was the driver. Guilty of drive-by murder in the first degree, and they're guilty of the special circumstances."

The jury's true finding under section 190.2, subdivision (a)(21), that defendant "did, as a principal, and aider and abettor, intentionally discharge a firearm from a motor vehicle with the intent to inflict death" necessarily means the jury found defendant acted with the intent to kill. If he acted with the intent to kill, defendant is not eligible for relief under section 1172.6. (§ 189, subd. (e); see *Strong*, *supra*, 13 Cal.5th at p. 710 ["Senate Bill 1437 relief is unavailable if the defendant was either the actual killer, acted with the intent to kill, or 'was a major participant in the underlying felony and acted with reckless indifference to human life.'"].)

The jury's true finding on the drive-by murder special circumstance allegation means the jury could not have convicted defendant of murder under the natural and probable consequences doctrine. Rather, by finding defendant had the intent to kill, the jury in effect found him guilty of murder as a direct aider and abettor. (Cf. *People v. Medrano* (2021) 68 Cal.App.5th 177, 183-184 ["By convicting appellant of conspiracy to commit first degree murder," the jury "in effect found that appellant was a direct aider and abettor of the killings" because the jury instruction required the jury to find he acted

13

"'with the specific intent to agree to commit . . . first degree murder and with the further specific intent to commit such offense.'"].) This satisfies the amended provisions of the statutes as they apply to a person convicted of murder where he or she was not the killer. Because the jury did not impute malice to defendant and convict him under a no-longer valid theory, he can "presently be convicted of murder" (§ 1172.6, subd. (a)(3)), notwithstanding changes to §§ 188 or 189. (See *People v. Mancilla* (2021) 67 Cal.App.5th 854, 864, 867-868 [defendant was "ineligible for relief under section [1172.6] as a matter of law" because the jury did not convict him under a theory of liability affected by the 2019 amendments to the law of murder]; *People v. Bentley* (2020) 55 Cal.App.5th 150, 154 [special circumstance finding under § 190.2, subd. (a)(21), incorporated finding of intent to kill, rendering a defendant ineligible for relief under § 1172.6].)

Defendant's reliance on *People v. Pacheco* (2022) 76 Cal.App.5th 118 (*Pacheco*)[9] is misplaced. "*Pacheco* is inapplicable to the case before us because its analysis is limited to the issue of the preclusive effect of the jury's true finding of the gang special circumstance allegation. [Citation.] In a footnote, the *Pacheco* court is clear that it did not consider any potential argument that the jury's first degree murder finding

---

[9] "On May 18, 2022, our Supreme Court granted review in *Pacheco*, *supra*, 76 Cal.App.5th 118 (S274102) but has deferred further action pending disposition of *People v. Curiel* (Nov. 4, 2021, G058604 [nonpub. opn.]), review granted January 26, 2022, S272238 [lead case], which presents the following issue: 'Does a jury's true finding on a gang-murder special circumstance (Pen. Code, § 190.2, subd. (a)(22)) preclude a defendant from making a prima facie showing of eligibility for resentencing under Penal Code section [1172.6]?'" (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1252, fn. 10.)

(premeditation and deliberation) or the related jury instruction (CALCRIM No. 521 [first degree murder instructions]), caused Pacheco to be ineligible for relief under section 1172.6 as a matter of law. [Citation.]

"In *Pacheco*, [the defendant] and other gang members jumped two people; one victim died and the other survived. [Citation.] [The defendant] was convicted of first degree murder as an aider and abettor, attempted murder, and gang participation. [Citation.] The jury also found true a gang special circumstance allegation. [Citation.] The jury was instructed on aiding and abetting a crime (which would include murder) (CALCRIM No. 401) and aiding and abetting a murder under the natural and probable consequences theory. [Citation.] The jury was also instructed that in order to find the gang special circumstance to be true, the People had to prove: '"1. *A perpetrator* intentionally killed [the victim]; [¶] 2. At the time of the killing, *the defendant* was an active participant in a criminal street gang; [¶] 3. *The defendant* knew that members of the gang engage in or have engaged in a pattern of crim[inal] gang activity; [¶] 4. The murder was carried out to further the activities of the criminal street gang; [¶] AND [¶] 5. *The defendant had the intent to kill at the time of the killing*." (CALCRIM No. 736, italics added.)' [Citation.]

"The appellate court reversed the trial court's summary denial of [the defendant's] section 1172.6 petition as the jury's true finding on the gang special circumstance allegation did not render [the defendant] ineligible for relief under section 1172.6 as a matter of law. [Citation.] The *Pacheco* court explained as follows: '[T]he jury's true finding on the gang special circumstance certainly establishes [the defendant] intended to

15

kill [the victim] at the time of his killing (the mens rea). But the gang circumstance instruction does not establish—as a matter of law—that Pacheco *directly aided and abetted* the killing of [the victim] (the actus reus).' [Citation.] 'Therefore, the jury could have potentially found [the defendant] intended to kill [the victim] under the gang special circumstance enhancement (the mens rea), but under the natural and probable consequence theory, [the defendant] only actually aided and abetted the nontarget crime of disturbing the peace (the actus reus).' [Citation.]

"In sum, *Pacheco* is inapplicable to the case before us. Unlike in *Pacheco*, [here,] the record of conviction conclusively demonstrates the jury could not have considered the driveby shooting special circumstance allegation without first finding that [the defendant] was guilty of first degree murder, as either a perpetrator or direct aider and abettor, thereby rendering him ineligible for section 1172.6 relief as a matter of law. And it is that argument that we find dispositive." (*People v. Williams*, *supra*, 86 Cal.App.5th at pp. 1257-1258.)[10]

---

[10] Moreover, the record demonstrates defendant was an active participant in the drive-by shooting. After leaving the party for a few minutes, he briefly returned, left a second time to drive around the streets until they found an individual whom they believed to be a member of EYC. Defendant then pulled the car into the gas station and positioned it to enable each shooting to take place. He waited for codefendant to fire two separate shots, then sped off, instead of rendering aid. This circumstantial evidence sufficiently showed that defendant knew codefendant intended to shoot the victims, and defendant shared the intent to kill them. (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054; see *People v. White* (2014) 230 Cal.App.4th 305, 319 [in determining the state of mind of the aider and abettor, the "existence of the requisite knowledge may be established by circumstantial evidence"].)

16

## III.  DISPOSITION

The postjudgment order denying defendant's petition for resentencing under section 1172.6 is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER<br>
J.

We concur:

RAMIREZ<br>
P. J.

CODRINGTON<br>
J.